UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SPEAR MARKETING, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:12-CV-3583-B |
| | § | |
| BANCORPSOUTH BANK and | § | |
| ARGO DATA RESOURCE | § | |
| COPORATION, | § | |
| | § | |
| Defendants. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Plaintiff Spear Marketing, Inc.'s ("Spear Marketing" or "SMI") Motion to Remand filed October 9, 2012 (doc. 12). For the reasons listed below, the Motion to Remand is **DENIED**.[1]

## I.

## BACKGROUND[2]

This case concerns the alleged theft of Spear Marketing's trade secrets by Defendants BancorpSouth Bank ("BancorpSouth") and ARGO Data Resource Corporation ("ARGO"). Ten years ago, BancorpSouth contracted with Spear Marketing to use its proprietary cash management

---

[1]Also pending before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint filed September 27, 2012. The Court will address that motion in a separate order.

[2]For the reasons stated later in this order, *see* Section III(A), *infra*, the Court looks to SMI's Original Petition ("Pet."), rather than its Amended Complaint, in resolving the Motion to Remand. The Court also looks to the Original Petition in drawing its factual account.

1

system known as VaultWorks. Pet. 2.[3] VaultWorks was developed by SMI to optimize the amount

of cash a banking institution needs on hand at its branch and ATM locations to satisfy customer

demand and operate profitably. *Id.* at 1. In March 2010, SMI approached ARGO about the possible

sale of VaultWorks for $2 million. *Id.* at 2. During a VaultWorks demonstration presented to several

ARGO representatives on April 6, 2010, SMI explained that one of its largest customers was

BancorpSouth, which was an attractive selling point because BancorpSouth was already using

ARGO's product to process its daily teller window transactions. *Id.* ARGO had also expressed an

interest in VaultWorks after representing that it neither had a product like VaultWorks nor had it

considered developing one. *Id.* Despite this interest, all communications from ARGO to SMI had

ceased by the end of May 2010. *Id.* SMI now alleges that at some time after the April 2010

demonstration, ARGO collaborated with BancorpSouth to misappropriate SMI's trade secrets,

leading to BancorpSouth's termination of its VaultWorks agreement with SMI in January 2012. *Id.*

SMI also alleges that BancorpSouth and ARGO are currently using SMI's trade secrets relating to

VaultWorks without SMI's consent. *Id.* As a result, on August 10, 2012, SMI filed its Original

Petition in the 68th District Court of Dallas County, Texas, Cause No. 12-8901, asserting claims for

violation of the Texas Theft Liability Act, misappropriation of trade secrets, conversion, unjust

enrichment, fraud, constructive fraud, breach of contract, tortious interference, unfair competition,

and civil conspiracy. *Id.* at 1-2.

On September 4, 2012, Defendants filed their Notice of Removal, alleging that all of SMI's

claims were preempted by Section 301 of the Copyright Act and stating that the Copyright Act

---

[3]The first two pages of the Original Petition do not have paragraph numbers. The Court cites to the page number where no paragraph number is listed.

transforms these preempted state law claims into federal claims for the purposes of the well-pleaded complaint rule.[4] Notice of Removal 2. In response to the removal, SMI filed its First Amended Complaint[5] and its Motion to Remand. The Motion is now ripe for the Court's consideration.

## II.

## LEGAL STANDARD

A defendant may remove an action filed in state court to federal court if the case could have originally been filed in federal court. 28 U.S.C. § 1441(a). Federal subject matter jurisdiction is limited, and federal courts may entertain only those cases involving a question of federal law or those where parties are of diverse citizenship. *See* 28 U.S.C. §§ 1331-32. Because the removal statute is strictly construed, any ambiguities are construed against removal. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *see also Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) (stating that doubts regarding removal are resolved against federal jurisdiction). The party invoking federal jurisdiction has the burden of establishing it. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). If at any point during the course of litigation "it appears that the [federal] district court lacks subject-matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

---

[4]Defendants also filed a Motion to Dismiss on September 27, 2012, arguing that SMI's First Amended Complaint should be dismissed as SMI's claims are preempted by the Copyright Act. The Motion to Dismiss also argues that the Amended Complaint does not meet the applicable pleading requirements. The Court will address the Motion to Dismiss in a separate order.

[5]The First Amended Complaint, filed on September 13, 2012, drops SMI's conversion claim, among other changes.

## III.

## ANALYSIS

Although SMI asserted only state claims in its Original Petition, Defendants removed this case based on the purported preemption of SMI's state claims by the Copyright Act.[6] Notice of Removal 2. SMI does not dispute that the Copyright Act may, in certain cases, completely preempt state claims. Instead, SMI argues that its claims in this case, focused on the alleged theft of SMI's trade secrets, fall outside the subject matter of copyright for preemption purposes. Accordingly, the Court is faced with one main question in addressing the motion to remand – are the claims in fact preempted? If so, removal was proper. If not, removal was improper, and the case must be remanded to state court.

A.    *Which Complaint?*

The parties first dispute which complaint the Court should look to in assessing whether removal was proper. Defendants argue that the Court should look at whether jurisdiction was proper at the time of removal, and therefore the Court should look to the Original Petition filed in state court. SMI counters that the Court should look to the First Amended Complaint, filed after this case was removed.

Jurisdiction is determined as of the time of removal, and post-removal events will generally not deprive the court of jurisdiction. *Bank One Tex. Nat'l Ass'n v. Morrison*, 26 F.3d 544, 548 (5th Cir. 1994) (citations omitted). *See also Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 507 (5th Cir. 1985) ("the majority view is that a plaintiff's voluntary amendment to a complaint after removal to

_____

[6]Defendants do not claim that the Court has diversity jurisdiction over this case.

4

eliminate the federal claim upon which removal was based will not defeat federal jurisdiction")

(citations omitted). This "time of removal" rule is more commonly applied in cases removed on the

basis of diversity jurisdiction, and at least one court has suggested that the time of removal rule is less

appropriate in the context of cases removed on the basis of federal question jurisdiction. *See New*

*Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1503 (3d Cir. 1996)

(stating that "[t]he rule that jurisdiction is assessed at the time of the filing of the complaint has been

applied only rarely to federal question cases" but also noting that "a subsequent amendment to the

complaint after removal *designed to eliminate the federal claim* will not defeat federal jurisdiction")

(citation omitted) (emphasis in original). However, as explained by the Fifth Circuit,

> When a plaintiff chooses a state forum, yet also elects to press federal claims, he runs the risk of removal. A federal forum for federal claims is certainly a defendant's right. If a state forum is more important to the plaintiff than his federal claims, he should have to make that assessment before the case is jockeyed from state court to federal court and back to state court. The jockeying is a drain on the resources of the state judiciary, the federal judiciary and the parties involved; tactical manipulation by the plaintiff cannot be condoned.
>
> The rule that a plaintiff cannot oust removal jurisdiction by voluntarily amending the complaint to drop all federal questions serves the salutary purpose of preventing the plaintiff from being able to destroy the jurisdictional choice that Congress intended to afford a defendant in the removal statute.

*Boelens*, 759 F.2d at 507 (citations omitted).[7]

---

[7]The *Boelens* court continued to explain that:

The same considerations are not present, however, in a case of original federal question jurisdiction in which the plaintiff, rather than the defendant, is invoking the jurisdiction of the federal court. In that case, because the burden is on the plaintiff to establish jurisdiction in the first instance, we conclude that the plaintiff must be held to the jurisdictional consequences of a voluntary abandonment of claims that would otherwise provide federal jurisdiction.

*Id.* at 507-08. Given that the plaintiff in *Boelens* filed her case in federal court under original federal jurisdiction based on a federal claim, the court looked to the amended complaint in determining whether

Although the analysis of the Fifth Circuit in *Boelens* did not concern cases where defendants removed the case based on federal preemption, the same policy considerations inform and guide the Court's analysis here. Thus, the Court finds that in cases removed on the basis of federal preemption, the plaintiff cannot oust removal jurisdiction by voluntarily amending the complaint to drop all preempted claims. In light of this determination, the Court assesses whether removal was proper at the time of removal and looks to the Original Petition, rather than Plaintiff's First Amended Complaint, which was filed after removal, in determining whether any claims are preempted.[8]

B.      *Complete Preemption*

On its face, SMI's Original Petition does not assert a federal claim. Under the "well-pleaded complaint" rule, federal jurisdiction "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citation omitted). However, under the "complete preemption doctrine," courts have sometimes held that "the pre-emptive force of a [particular] statute is so 'extraordinary' that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Globeranger Corp. v. Software AG*, 691 F.3d 702, 705-06 (5th Cir. 2012) (citing *Caterpillar*, 482 U.S. at 393). If a federal statute completely preempts an area of state law, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law. *Caterpillar*, 482 U.S. at 393 (citation omitted). The Fifth Circuit has held that Section 301(a) of the Copyright Act completely preempts the substantive field.

---

subject matter jurisdiction existed.

      [8]The Court expresses no opinion at this time as to whether any of the claims of the Amended Complaint are preempted.

*Globeranger*, 691 F.3d at 705-706. Accordingly, if the Court determines that any of SMI's state claims are preempted, this Court has federal jurisdiction in this case.

In determining whether a state law claim is preempted by the Copyright Act, the Court applies a two-prong test. *Globeranger*, 691 F.3d at 706 (citing *Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003)). First, the Court determines whether the claim falls within the subject-matter of copyright. *Id.* Next, the Court looks to whether the state law cause of action protects rights that are "equivalent" to any of the exclusive rights protected by copyright. *Id.* Both prongs of this test must be met for a claim to be preempted. *Id.*

Defendants' Notice of Removal alleges that all of SMI's claims are preempted by Section 301 of the Copyright Act, given that the Original Petition alleges that Defendants "copied objects, materials, devices or substances, including writings" belonging to SMI and then "communicated and transmitted" the copied materials, since writings fall within the subject matter of copyright and copying, communicating, and transmitting are rights equivalent to copyright. Notice of Removal 3. Defendants further contend that SMI's claims are preempted by the Copyright Act given that "the subject matter at issue is indisputably SMI's Internet-based cash management software program and ARGO's cash management software program," and all of SMI's claims "hinge[] on the allegation that Defendants copied and in some way used or reproduced its writings, software, and 'ideas.'" *Id.* In contrast, SMI argues that the subject matter of its state law claims fall outside the subject matter of copyright and its state law claims are not equivalent to any rights protected by copyright because they contain extra elements and are "qualitatively different" in nature from copyright claims. *See*, *e.g.*, Mot. Remand 1. The Court will examine these contentions below.

7

C.    *Do the Claims Fall Within the Subject Matter of Copyright?*

The parties do not dispute that copying of software falls within the subject matter of

copyright. However, SMI argues that its claims do not "allege mere copying, as in a copyright claim"

but that "ARGO wrongfully gained access to SMI's Trade Secrets; BancorpSouth wrongfully

disclosed SMI's Trade Secrets; and the Defendants wrongfully stole SMI's Trade Secrets."[9] Mot.

Remand 6. In response, Defendants argue that the Original Petition alleges that Defendants copied,

communicated, transmitted its writings and materials and that BancorpSouth disclosed the "features

and functionalities of VaultWorks, that ARGO then used to create a cash management system to

compete with VaultWorks," such that SMI's claims clearly fall within the subject matter of copyright.

Defs.' Mot. Resp. 7 (citing Pet. ¶¶ 36, 42-43).

In the Court's view, the facts of this case are similar to those in *Globeranger Corporation v.*

*Software* AG, 691 F.3d 702 (5th Cir. 2012). There, the plaintiff had developed a passive radio

frequency identification ("RFID") system for commercial use, which permitted items with RFID

"tags" attached to pass through an area with an RFID reader and the recording of data on those

items' movement. *Id.* at 704. This system also included "business processes and software associated

with those business processes" which told the RFID system "how to recognize what the something

is, where it came from, where it is going, how long it took to get there, and most importantly what

the RFID System should do about it." *Id.* Although the defendants argued that the plaintiffs'

complaint was based solely on copying of software, the *Globeranger* court, looking at the plaintiff's

_____

[9]SMI bases its Motion to Remand on the allegations contained within the Amended Complaint.
However, as previously noted, the Original Petition is the relevant complaint for the purposes of determining
whether remand is appropriate.

claims for misappropriation of trade secrets, conversion, unfair competition, conspiracy, and tortious interference, found that the plaintiff's allegations plausibly established copying of more than merely copyrightable expressions through allegations that extended beyond software.[10] *Id.* at 705, 708-09.

In reaching this conclusion, the *Globeranger* court discussed its prior decision in *Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1341 (5th Cir. 1994). There, the court explained that "as one moves away from the literal code to more general levels of a program, it becomes more difficult to distinguish between unprotectable ideas, processes, methods or function, on one hand, and copyrightable expression on the other." Thus, while the court had held that some nonliteral aspects of computer programs were within the scope of copyright, it did not conclude that "copyright protection sweeps so broadly as to encompass whole structures or systems of which software is only a part." *Globeranger*, 691 F.3d at 707 (citing *Eng'g Dynamics*, 26 F.3d at 1341-42). The court explained that in *Engineering Dynamics*, the plaintiff sough copyright protection of computer manuals and data cards associated with its software. The data cards "provided input formats to use in categorizing data such that a computer program could utilize that data," and the plaintiff alleged copying of its input formats. The *Engineering Dynamics* court found that the "nonliteral elements of input formats were copyrightable as expressive and did not fall under Section 102(b)'s 'useful article exception.'" *Globeranger*, 691 F.3d at 707 (citation omitted). The *Globeranger* court then explained that "[t]he crucial distinguishing fact between *Engineering Dynamics* and this

---

[10]However, the court also found that the plaintiff's conversion claim, to the extent it was based on conversion of intangible property, would be preempted and would "keep this case in federal court at the motion to dismiss stage." *Id.* at 709.

case is that even at its broadest point *Engineering Dynamics* is about software. The current case contains plausible allegations that extend beyond software." *Id.* at 708.

The *Globeranger* court then proceeded to discuss *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 531 (5th Cir. 1994). There, the Fifth Circuit examined a copyright claim "over alleged copying of the software expression of a specific business model," where the plaintiff's computer program designed to assist in management decisions contained eight "questions" or "problem attributions" and five "definitions or processes" – the defendants created a modified program containing the original questions and definitions but added four new questions. *Globeranger*, 691 F.3d at 708. The court found that even if the questions and processes conveyed unprotectable ideas, "the specific words, phrases, and sentences selected to convey those ideas are protectable expression." *Id.* In contrast, the basic idea of a management training program and the specific idea of training managers by asking them a series of questions about their decision-making and then suggesting a preferred decision making process, based on their answers, was not. *Id.* Distinguishing the claims in *Kepner*, the *Globeranger* court explained:

> Even though the allegations in [the plaintiff's] petition include copying of specific expressions, it has also alleged the copying of its business practices that are not necessarily limited to specific expressions. [Plaintiff's] allegations plausibly establish copying of more than the types of copyrightable expressions we discussed in *Engineering Dynamics* and *Kepner-Tregoe*.

*Id.* at 708. Ultimately, the *Globeranger* court explained that the plaintiff's allegations that it "implements RFID solutions at client sites," including "the types of procedures, processes, systems, and methods of operation that are excluded from copyright protection under Section 102(b)," and these allegations, if true, would be outside of the subject matter of the Copyright Act and not preempted. *Id.* at 709.

10

Such analysis is equally applicable in this case. Here, SMI alleges:

> SMI amassed a vast amount of know-how, ideas, procedures, processes, systems, methods of operation, concepts, and other information relating to VaultWorks, all of which constitute valuable trade secrets owned by SMI ("SMI's Trade Secrets"). This information is highly confidential and proprietary to SMI and is used by SMI in its business. The information presents an opportunity to obtain an advantage over SMI's competitors that do not know or use the information.
>
> More specifically, SMI's Trade Secrets constitute know-how, ideas, procedures, processes, systems, methods of operation, and concepts that fall into the following two general categories:
>
> • <u>Technical Data and Information</u>, including but not limited to, the selection of categories of input data used by VaultWorks; "Black Box" formulas, algorithms, and methods of operation used in VaultWorks; selection of categories of output data to be generated by VaultWorks; customer preferences regarding key output data; customer preferences regarding output data to include in reports; and customer preferences regarding organization of output data in reports; and
>
> • <u>Business Information</u>, including but not limited to, past, present and prospective customer lists; past, present and prospective customer contacts; marketing strategies; budgets, forecasts and business plans; cost and pricing information for VaultWorks; information about SMI personnel; and financial information about SMI.

Pet. ¶¶ 17-18. Such allegations, similar to those in *Globeranger*, appear to include items outside the subject matter of copyright, such as ideas, procedures, processes, and methods of operation. As such, at least some of SMI's allegations plausibly establish copying of business information or practices "not necessarily limited to specific expressions," and the Original Petition plausibly establishes copying of more than the types of copyrightable expressions set forth by the Fifth Circuit. *See Globeranger*, 691 F.3d at 708-09. Accordingly, at least some of Globeranger's claims are not within the subject matter of copyright and are not preempted, at least at this stage of the case.

However, at the same time, some of these items do appear within the subject matter of copyright and may concern specific expressions, such as the selection of categories of input and output data used by VaultWorks. Despite SMI's arguments to the contrary, this case concerns, at

11

least partly, the copying of certain elements of the VaultWorks software. Without expressing an opinion at this time as to whether these elements are copyrightable,[11] the Court finds that at least some of the items for which SMI is asserting its claims in the Original Petition are within the subject matter of copyright.

D.    *Are the State Law Claims Equivalent to the Rights Protected by Copyright?*

Next, the Court looks to whether the state law cause of action protects rights that are "equivalent" to any of the exclusive rights protected by copyright. *Globeranger*, 691 F.3d at 706. A state-created right is equivalent to these rights "if the mere act of reproduction, distribution, or display infringes it." *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990) (citations omitted). The "extra-element" test is used to determine whether the protected rights under state law are equivalent to the rights protected under the Copyright Act. A state claim is equivalent if it involves "'elements that would not establish qualitatively different conduct by the defendants than the elements for an action under the Copyright Act.'" *Daboub v. Gibbons*, 42 F.3d 285, 290 (5th Cir. 1995) (citation omitted). The Court will now examine whether the asserted claims are equivalent to any of the exclusive rights protected by copyright.

1.    Texas Theft Liability Act

---

[11]Although some courts outside the Fifth Circuit suggest that the subject matter of copyright also includes noncopyrightable elements, the Fifth Circuit has not definitively addressed this issue. *See, e.g.*, *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1453 (7th Cir. 1996) (discussing trial court's determination that both software and data were fixed in a tangible medium of expression and were therefore within the subject matter of copyright, even if they are not sufficiently original to be copyrighted). The *ProCD* court explained that one function of Section 301(a) of the Copyright Act was to "prevent states from giving special protection to works of authorship that Congress has decided should be in the public domain," which is possible "only if 'subject matter of copyright' includes all works of a *type* covered by sections 102 and 103, even if federal law does not afford protection to them." *Id.* (citation omitted).

Under the Texas Theft Liability Act, a person who commits theft is liable for damages resulting from such theft. Tex. Civ. Prac. & Rem. Code § 134.003(a). SMI alleges that Defendants are liable through the Texas Theft Liability Act based on the Original Petition's allegations that they stole SMI's physical property, documents, confidential information, and trade secrets; copied objects, materials, devices or substances, including writings representing SMI's confidential information and trade secrets; and communicated and transmitted SMI's confidential information and trade secrets. Pet. ¶¶ 42-43. In their view, such alleged actions violate Texas Penal Code Section 31.05(b), which states that a person commits a theft of trade secrets if he knowingly and without the owner's effective consent steals a trade secret, makes a copy of an article representing a trade secret, or communicates or transmits a trade secret.

Here, SMI's Texas Theft Liability claim is based at least in part on SMI's allegations that Defendants copied and transmitted SMI's objects, devices, or substances, including writings. As such, SMI's claims are based at least in part on Defendants' reproduction, distribution, or display of SMI's trade secrets and confidential information, and are therefore equivalent and at least partly preempted by the Copyright Act. *See Taquino*, 893 F.2d at 1501; *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 790-91 (S.D. Tex. 2010) ("[t]he only potential extra element in theft liability is the "knowingly" requirement," and "elements of knowledge do not establish an element that is qualitatively different from a copyright infringement claim"); *Ledesma v. D.R. Horton, Inc.*, No. SA-08-CA-128-OG, 2008 WL 1912531, at *3 (W.D. Tex. Apr. 29, 2008) (Texas Theft Liability Act claim preempted as its elements were no different than those required to establish copyright infringement of non-tangible intellectual property). *But see Bynari v. Alt-N Techs., Ltd.*, Civ. Action No. 3:08-cv-242-L, 2008 WL 4790977, at *4-5 (N.D. Tex. Oct. 24, 2008) (Texas Theft Liability Act claim was not preempted

13

given that the crux of the claim was defendant's alleged misappropriation of plaintiff's trade secret by continuing to use and sell it, and "[s]uch appropriation is not a required element for a copyright infringement claim").

2.    Conversion

Under Texas law, conversion claims "are limited to the wrongful exercise of dominion and control over tangible, physical objects." *Real Estate Innovations, Inc. v. Hous. Ass'n of Realtors, Inc.*, 422 F. App'x 344, 350 (5th Cir. 2011) (citing *Carson*, 344 F.3d at 456). To the extent SMI asserts its conversion claim based on physical property, such claim is not preempted. *See id.* (citing 1-1 Nimmer on Copyright § 101(B)(1)(i)). However, to the extent SMI asserts its conversion claim based on conversion of intangible property, such allegation is preempted. *See id.*; *Globeranger*, 691 F.3d at 709 (conversion claim with respect to intangible property preempted).

Here, SMI alleges that Defendants "have in their possession, custody, or control, without SMI's consent, SMI's trade secrets, including physical property, documents, and confidential information pertaining to VaultWorks. On information and belief, BancorpSouth and ARGO are using, without SMI's consent, SMI's Trade Secrets, including physical property, documents, and confidential information pertaining to VaultWorks." Original Petition ¶ 40.[12] Such claim may be construed as alleging conversion of both tangible, physical property, in which case the conversion claim would not be preempted, and also conversion of intangible property, in which case the conversion claim would be preempted. Given that SMI's Original Petition alleges conversion of both

---

[12]The Petition later alleges in its "Third Cause of Action – Conversion" section that SMI owns certain physical property, documents, confidential information and trade secrets pertaining to VaultWorks and "proprietary ideas, processes, and/or other methodologies of VaultWorks," and that Defendants knowingly and without SMI's consent exercised dominion and control over SMI's property. Pet. ¶¶ 52-54.

14

tangible and intangible property, its conversion claim is partly preempted and Defendants' removal was proper.

As that the Court has found that at least two of SMI's claims, the Texas Theft Liability Act claim and the conversion claims, are at least partially preempted, for the purposes of jurisdictional analysis, the defendants make a sufficient argument to keep this case in federal court. *See Globeranger*, 691 F.3d at 709. Accordingly, SMI's Motion to Remand is **DENIED**.

    3.    <u>Other State Claims</u>

SMI's other state claims derive from the same nucleus of operative fact as the events giving rise to the Texas Theft Liability Act and conversion claims. As such, the Court may exercise supplemental jurisdiction over them and need not address whether each of those claims is independently preempted by the Copyright Act.[13] *See* 28 U.S.C. § 1367(a); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

## IV.

## CONCLUSION

For the reasons listed above, SMI's Texas Theft Liability Act and conversion claims are at least partially preempted. As such, SMI's Motion to Remand (doc. 12) is **DENIED**.

---

[13]The Court will revisit the issue of preemption in resolving SMI's Motion to Dismiss the First Amended Complaint. However, the Court has already determined that at least some of SMI's claims are not within the subject matter of copyright and are not preempted.

SO ORDERED.

SIGNED: May 16, 2013.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE