UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SPEAR MARKETING, INC., §
§
  Plaintiff, §
§
v. § CIVIL ACTION NO. 3:12-CV-3583-B
§
BANCORPSOUTH BANK and §
ARGO DATA RESOURCE §
CORPORATION, §
§
  Defendants. §

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Sealed Second Motion for Recovery of Attorneys' Fees and

Costs (Doc. 210) (Defendants' Motion). The Court **GRANTS in part** Defendants' Motion, finding

that Defendants are entitled to attorneys' fees and costs under the Texas Theft Liability Act

(TTLA), or alternatively, the Copyright Act and Federal Rule of Civil Procedure 54, respectively,

but not in the amounts requested. The Court accordingly reduces the fees awarded in accordance

with the lodestar standards of reasonableness, and reduces the costs awarded in accordance with

28 U.S.C. § 1920.

## I.

## BACKGROUND

Defendants move for attorneys' fees and costs incurred as a result of Spear Marketing, Inc.'s

(SMI) unsuccessful suit for theft of trade secrets. In deciding the motion, the Court must first

determine whether the TTLA, or alternatively, the Copyright Act entitles Defendants to recover

fees, and if so, in what amount. The Court must then determine what costs Defendants may recover

under Federal Rule of Civil Procedure 54 and 28 U.S.C. § 1920.

A.     *Factual Background*

The Court's June 11, 2014, Memorandum Opinion and Order recounts the facts in this case in detail. Doc. 177 [hereinafter Order Granting Summ. J.]; *see also Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 589–91 (5th Cir. 2015) (affirming this Court's orders denying remand (Doc. 28) and granting summary judgment (Doc. 177) in this case). To summarize, SMI owns a cash management software-based solution known as VaultWorks. Order Granting Summ. J. 1. BancorpSouth licensed this software from SMI for nearly ten years, but then opted to license alternative software solution. *Id.* at 2. This alternative solution—known as the Cash Inventory Optimization (CIO) solution—belonged to ARGO. *Id.* As a result, SMI brought suit, alleging that BancorpSouth had colluded with ARGO to misappropriate SMI trade secrets (i.e., VaultWorks). *Id.*

1.     SMI's TTLA Claim

SMI filed its Original Petition in the 68th District Court of Dallas County, Texas, asserting claims for, *inter alia*, conversion and violation of the TTLA. Doc. 28, Mem. Op. & Order 2 [hereinafter Order Den. Remand]. The outcome of Defendants' Motion turns on this Court's and the Fifth Circuit's treatment of the TTLA claim. Defendants removed the suit to this Court on the basis of federal question jurisdiction. *Id.* at 2–3. Specifically, Defendants alleged that section 301 of the Copyright Act[1] completely preempted SMI's claims and transformed them into federal claims

---

[1] In pertinent part:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section

for the purposes of the well-pleaded complaint rule. *Id.*; *see also GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 706 (5th Cir. 2012) ("Section 301(a) of the Copyright Act completely preempts the substantive field.").

The Court accepted this argument and denied remand. Order Den. Remand 15. It held that SMI's conversion and TTLA claims were at least partially preempted. *Id.* at 12–14. At this point, the Court neither dismissed the partially preempted claims (allowing SMI to replead federal claims) nor converted them into federal claims (treating them like copyright infringement claims). *See Spear Mktg., Inc.*, 791 F.3d at 598 n.62. Instead, the Court retained jurisdiction, but allowed the partially preempted state-law claims to proceed, *see* Doc. 44, Mem. Op. & Order 8, 15–16 [hereinafter Order Den. Dismissal] (denying dismissal on preemption grounds and on the merits), until disposing of them on summary judgment in favor of the Defendants. Order Granting Summ. J. 17, 29–30 (granting summary judgment on the merits but not reaching preemption issue). SMI appealed the Court's orders denying remand and granting summary judgment. *Spear Mktg., Inc.*, 791 F.3d at 589. The Fifth Circuit affirmed both. Essential to its ruling was its holding that SMI's "TTLA claims were completely preempted," not partially preempted, at the time of removal. *Id.* at 597.[2]

---

106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a).

[2] The Fifth Circuit, in reviewing this case, stated that "The district court denied SMI's motion, holding that the conversion and TTLA claims were *completely preempted*," *Spear Mktg., Inc.*, 791 F.3d at 591 (emphasis added), and "The district court held that SMI's conversion and TTLA claims were *completely preempted*," *id.* at 597 (same). But it also recognized that "the district court held that SMI's TTLA and conversion claims were at least *partially preempted* by § 301(a)," *id.* at 594 (same), and that "the district court [did not] dismiss[] the *partially preempted* claims." *Id.* at 598 n.62 (same). This seeming inconsistency can be

## 2.     Defendants' Bases for Attorneys' Fees and Costs

Before the appeal, Defendants filed a motion seeking attorneys' fees and costs. Doc. 181. The Court denied this motion, allowing Defendants the opportunity to re-file after the Fifth Circuit's ruling. Doc. 205. Post-appeal, on July 14, 2015, Defendants re-filed, requesting attorneys' fees under the TTLA, Tex. Civ. Prac. & Rem. Code § 134.005(b), or alternatively, under the Copyright Act, 17 U.S.C. § 505, and costs under Rule 54 and 28 U.S.C. § 1920. Defendants' Motion 1, 23.[3]

SMI has now responded to the Defendants' Motion with two preemption-related arguments against awarding attorneys' fees. Doc. 216, Pl.'s Resp. and Obj. to Defs.' Sealed Second Mot. for Recovery of Attorneys' Fees and Costs 1 [hereinafter SMI's Resp.]. First, SMI argues the Court could not adjudicate the completely preempted TTLA claim; therefore, no party could prevail on it to recover attorneys' fees. *Id.* Then, it argues that completely preempted state-law claims alone do not move an action under Title 17, and thus do not allow Defendants to recover fees under the Copyright Act. *Id.*

Defendants counter that SMI should be judicially estopped from making either argument because it "neither dismissed the claim nor sought to convert it into a claim for copyright infringement," but instead chose to pursue the TTLA claim "throughout the case." Doc. 218, Reply in Supp. of Defs.' Second Mot. for Recovery of Attorneys' Fees and Costs 1–2 [hereinafter Defendants' Reply]. Alternatively, Defendants contend that finding preemption creates a basis for

---

explained by considering complete preemption in some sense as a term of art. This Court found that partial aspects of SMI's conversion and TTLA claims were completely preempted. The Fifth Circuit recognized this, and took it further to find that the entirety of SMI's conversion and TTLA claims were completely preempted. *See id.* at 594–99. Going forward, the Court follows the Fifth Circuit's holding.

[3] To substantiate their costs, Defendants each submitted a Bill of Costs (Docs. 178, 179) to which SMI objected. Docs. 185, 186.

reasonable attorneys' fees under the Copyright Act. *Id.* at 9.

## II.

## LEGAL STANDARD

A.   *Federal Rule of Civil Procedure 54*

Rule 54(d) of the Federal Rules of Civil Procedure governs costs and attorneys' fees. Rule 54(d)(1) allows courts to award costs[4] other than attorneys' fees to prevailing parties. Under the American Rule, however, prevailing parties generally cannot recover attorneys' fees without a statutory or contractual basis. *Summit Valley Indus, Inc. v. United Bhd. of Carpenters & Joiners*, 456 U.S. 717, 721 (1982). Rule 54(d)(2) provides the procedure for the prevailing party, by motion, to specify the statute, rule, or other grounds entitling them to the award.

B.   *Tex. Civ. Prac. & Rem. Code § 134.005(b)*

The TTLA mandates that "[e]ach person who prevails in a suit under this chapter shall be awarded court costs and reasonable and necessary attorney's fees." Tex. Civ. Prac. & Rem. Code § 134.005(b). While the TTLA does not define what it means to prevail in a suit, courts have held that the phrase applies to defendants who successfully defend against a TTLA claim. *See, e.g., Arrow Marble, LLC v. Estate of Killion*, 441 S.W.3d 702, 706 (Tex. App.—Houston [1st Dist.] 2014, no pet.). A successful defense is one that materially alters the plaintiff's legal relationship with the defendant (e.g., a dismissal with prejudice). *See id.* A dismissal without prejudice does not satisfy the prevailing party requirement. *Id.*

---

[4] The term "costs" is defined by 28 U.S.C. § 1920. *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987).

C.      *17 U.S.C. § 505*

The Copyright Act authorizes a district court to "award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. Although fees are awarded in the trial court's discretion, an award of fees "is the rule rather than the exception and should be awarded routinely." *Virgin Records Am., Inc. v. Thompson*, 512 F.3d 724, 726 (5th Cir. 2008) (internal quotation marks omitted). Such fees should be awarded evenhandedly to both prevailing plaintiffs and defendants. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). In determining whether a fee award is appropriate, the Court considers the factors set out in *Fogerty*: "frivolousness, motivation, objective unreasonableness (both in the factual and the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 534 n.19.

D.      *Lodestar Method*

If the Court determines that the prevailing party should receive attorneys' fees, the Court must use the "lodestar" method to determine the reasonableness of the requested fees. *Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 380 (5th Cir. 2010). "The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012)). "There is a strong presumption of the reasonableness of the lodestar amount." *Id.* (citing *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006)). Nevertheless, after calculating the lodestar, courts often evaluate the resulting value in relation to "the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714,

- 6 -

717–19 (5th Cir. 1974),"[5] listed below in section III.E (Johnson Factors). *Jimenez*, 621 F.3d at 380.

## III.

## ANALYSIS

Defendants request attorneys' fees under either the TTLA or the Copyright Act. Deciding whether fees are appropriate depends, first, on deciding which, if either, of these bases for awarding fees is proper under the circumstances of this case. That decision depends at least partially on the effects of this Court's and the Fifth Circuit's preemption rulings on which claims (TTLA and/or Copyright Act) were actually adjudicated, triggering the statutes' attorney's fees provisions.

First, the Court must determine whether to treat Defendants as prevailing parties under the TTLA because they successfully defended against SMI's TTLA claim, despite the fact that the Fifth Circuit later held the TTLA claims completely preempted. Second, the Court must determine whether Defendants may alternatively recover attorneys' fees under the Copyright Act even though SMI did not bring any claims under Title 17 and no such claims were adjudicated by this Court. A. *Availability of Recovery of Attorneys' Fees under the TTLA*

When a federal statute completely preempts a state-law claim, the claim "is in reality based on federal law," though pleaded in state law terms. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207–08 (2004). Complete preemption "converts an ordinary state common law complaint into one stating a federal claim *for purposes of the well-pleaded complaint rule* [i.e., for jurisdictional purposes]." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987) (emphasis added). This does not answer the question of what happens to the substantive claim after complete preemption converts it.

---

[5] Overruled on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989).

The Fifth Circuit has not decided the "the appropriate [procedural] course of action [at the trial court level] for claims found to be completely preempted" as the case moves forward after the preemption ruling. *Spear Mktg., Inc.*, 791 F.3d at 598 n.62. Though it has outlined different possible approaches:

> District courts in this circuit are split. Most hold that a "[c]omplete preemption results in dismissal of the state-law claim," even though they "typically allow plaintiffs to replead and assert the dismissed state law claims as federal claims." Defendants, as well as the Second Circuit, urge this approach. But at least one of our district courts does not dismiss the claim, instead treating it as having become a properly asserted federal claim and proceeding to adjudicate it on the merits.

*Id.* (citations omitted) (collecting cases). And the Circuit appears to be leaning toward the dismissal approach. *Id.* ("[O]ur decision in *GlobeRanger* appears to provide support for the dismissal approach.") (citing *GlobeRanger Corp.*, 691 F.3d at 706).

This approach, as the Second Circuit explains, would require courts to determine whether federal law completely preempted a state-law claim, and if so, assume jurisdiction but then dismiss the claim for failing to state a cause of action. *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308–09 (2d Cir. 2004). The alternate approach would require courts to convert state-law claims into federal claims not only for jurisdictional purposes but also for the merits. *See id.*

Here, this Court followed neither approach because it found the TTLA claim to be only partially but not completely preempted. *See* Order Den. Remand 13, 15. And, because it was unclear to the Court which aspects of SMI's claim were preempted and which aspects were not, the Court retained jurisdiction and allowed the theoretically un-preempted aspects of the claim to proceed on the merits. The fact that the Fifth Circuit later held that the entirety of SMI's TTLA claim was completely preempted at the time of removal suggests, in hindsight, that the Court would have been

correct in adopting the first or second approach instead of the third.[6] In any event, the Fifth Circuit stated that any error by this Court in following the third approach was harmless because SMI would not have been able to prevail as a matter of law on copyright claims had the Court adjudicated it. *Spear Mktg., Inc.*, 791 F.3d at 598 n.62.

But adopting the third approach has created a wrinkle in determining whether Defendants may recover attorneys' fees under the TTLA. In contrast, had the Court treated the TTLA claim as completely preempted and dismissed it (first approach), allowing SMI to replead, there could be no recovery under the TTLA because without adjudication of the TTLA claim, the Defendants could not have prevailed on it. *See Arrow Marble, LLC*, 441 S.W.3d at 706 (dismissal without prejudice generally not considered prevailing). And if the Court had converted the claim to a federal claim (second approach), there would have been no TTLA claim, again making recovery impossible because Defendants could not have adjudicated the claim or prevailed. The Court's approach, however, resulted in the adjudication on the merits of the TTLA claim on resulting ultimately in a complete disposition of the claim. *See, e.g.,* Order Den. Dismissal; Order Granting Summ. J.  In fact, the TTLA aspects of this case were fully litigated for almost two years, with 3 dispositive motions and 177 docket entries at the time the Court granted summary judgment against SMI. *See Arrow Marble, LLC*, 441 S.W.3d at 706 (prevailing defendant entitled to attorneys' fees for dismissal with prejudice). This creates a possibility of recovery because Defendants prevailed against SMI's TTLA claim.

The Court treated the TTLA claim in a way that would allow recovery. Now the Court must

---

[6] Nonetheless, the Fifth Circuit has not ruled on a proper approach.

decide how to treat the claim following the Fifth Circuit's ruling that the TTLA claim was completely preempted, not partially preempted, at the time of removal. Stated another way, the question is whether the Fifth Circuit's preemption ruling essentially retroactively precludes recovery on the TTLA claim despite the fact that the TTLA claim was fully adjudicated on the merits by this Court, in turn, necessitating the expenditure of attorney's fees and costs by the parties. There is no binding legal authority on how to proceed with attorney's fees and costs claims under these circumstances. Nonetheless, because the TTLA claim was fully adjudicated at the district court level and due to the lack of legal clarity on the potentially retroactive effect of the Fifth Circuit's "complete preemption" ruling, the  Court will award fees and costs to the Defendants under the TTLA . The Court will also consider Defendants' alternate theory of recovery under the Copyright Act.[7]

B.    *Availability of Recovery of Attorneys' Fees under the Copyright Act*

Alternatively, Defendants argue that they are entitled to attorneys' fees under section 505 of the Copyright Act, which provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. This language makes an award of attorneys' fees available only for a "civil action under this title." *Id.* The Fifth Circuit has not addressed whether preempted state-law claims

---

[7] Defendants contend that SMI's complete preemption arguments should be estopped. Defendants' Reply 2–3 (citing *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003)). The Court disagrees. In this Circuit, two bases for judicial estoppel must be satisfied before a party can be estopped: (1) the position of the party to be estopped must be clearly inconsistent with its previous one, and (2) that party must have convinced the court to accept the previous position. *Hall*, 327 F.3d at 396. Here, SMI never convinced the Court that its TTLA claim was not preempted.

constitute a civil action under Title 17. The parties dispute the issue and primarily argue over the applicability of *Rosciszewski v. Arete Associates, Inc.*, 1 F.3d 225 (4th Cir. 1993), to the present case.[8] The *Rosciszewski* court held that "when § 301(a) completely preempts a state-law claim, it becomes a federal claim under Title 17" for the purpose of attorneys' fees under the Copyright Act. *Id.* at 232–33 (citing *Metropolitan Life Ins. Co.*, 481 U.S. at 67).

The treatise *Nimmer on Copyright* explains that an action comes under Title 17 when it "requires construction of the Copyright Act" in a manner seemingly matching the circumstances "according federal court jurisdiction." 5-14 Nimmer on Copyright § 14.10[B][1][b] & n.11 (2015) (citing § 12.01[A][1]). In accord with this, the *Rosciszewski* court's holding recognizes that complete preemption accords federal jurisdiction and seems to recognize that any preemption determination requires construction of the Copyright Act. *See* 1 F.3d at 233.

In *Rosciszewski*, a company filed a federal copyright infringement claim along with seven state-law claims. *Id.* at 228. It then amended its complaint, omitting the state claims, and eventually entered into a consent decree on its copyright claim. *Id.* One year later, an assignee of the company—the plaintiff Rosciszewski—filed suit in state court attempting to litigate the unpursued claims from the original action. *Id.* The defendant removed the case to federal court on complete preemption grounds and the court dismissed the claims as barred by res judicata. *Id.* Rosciszewski appealed. He did not challenge the res judicata ruling but instead challenged the district court's jurisdiction. *Id.* The Fourth Circuit affirmed. As part of its affirmance, it held that complete preemption transformed the state-law claims into federal claims for jurisdictional purposes under

---

[8] *Rosciszewski* is distinguishable. It has a very unique procedural posture and only summarily addressed the current issue. Looking at the reasoning in the whole of the opinion, however, the Court extrapolates the reasoning supporting the *Rosciszewski* court's holding.

Title 17. It concluded that this allowed for recovery under section 505. *Id.* at 232–33.

While the Fifth Circuit has not addressed this issue, it cited favorably to *Rosciszewski*. *GlobeRanger Corp.*, 691 F.3d at 706 (describing *Rosciszewski* as a "thoroughly reasoned opinion").[9] At least one other circuit court has taken a similar approach. *See, e.g., Domingo Cambeiro Prof'l Corp. v. Advent*, 211 F.3d 1273, 2000 WL 262590 (9th Cir. 2000) (unpublished) (finding preempted state-law claims sufficient to invoke 17 U.S.C. § 505). And the Fourth Circuit's approach appears consistent with *Nimmer on Copyright*. The Court is persuaded by the *Rosciszewski* court's conclusion that preemption invokes section 505. Therefore, the Court concludes that it has discretion to award reasonable attorneys' fees under the Copyright Act. The Court must now determine whether to exercise that discretion.

C.    *Defendants' Recovery of Attorneys' Fees under the Copyright Act*

The Fifth Circuit follows the "discretionary but routinely awarded" standard for section 505 cases. *Thompson*, 512 F.3d at 726. Courts must consider the *Fogerty* factors in light of this. *See Hogan Sys., Inc.*, 158 F.3d 319, 325 (5th Cir. 1998) (holding Fifth Circuit standard in accord with *Fogerty*). The Court will now consider whether SMI's suit was frivolous, improperly motivated, or objectively unreasonable, and whether granting fees advances considerations of compensation and deterrence.

Here, SMI's suit had at least some frivolous aspects. At the outset, SMI attempted to "carefully define[] its trade secrets to include only 'know-how, ideas, procedures, processes, systems, methods of operation, and concepts,'" to take its suit outside of the reach of the Copyright Act. *Spear Marketing, Inc.*, 791 F.3d at 594. This attempt clearly failed. The Court found two of SMI's

---

[9] In *GlobeRanger Corp.*, the Fifth Circuit cited to *Rosciszewski* for its reasoning concerning the issue of complete preemption under 17 U.S.C. § 301(a); however, the issue of whether complete preemption then invoked section 505 was not before the court, so it was not considered. 691 F.3d at 706.

claims at least partially preempted. Order Den. Remand 12–14. Rather than analyze the remainder of SMI's claims, the Court exercised supplemental jurisdiction over them. *Id.* at 14. But arguably, it could have found them preempted by the Copyright Act as well. Preemption overshadows the majority of this suit. Thus, had the Court not disposed of all of SMI's claims on the merits, it likely would have found them preempted.[10]

This is not to say that SMI did not have a non-frivolous case outside of the copyright context. True, the Fifth Circuit held that SMI could not have succeeded on copyright infringement claims. *Spear Marketing, Inc.*, 791 F.3d at 598 n.62. But while the copyright aspects of its case would have failed, some non-copyright aspects might not have. The non-copyright case, however, was smaller in size and warranted a smaller defense.

Essentially, SMI brought suit and forced Defendants to defend against claims, or at least parts of claims, on which it had no chance of prevailing. This weighs in favor of an award of attorneys' fees. *See SortiumUSA, LLC v. Hunger*, No. 3:11-CV-1656-M, 2015 WL 179025, at *3 (N.D. Tex. Jan. 14, 2015) (finding that the continued assertion of meritless claims warranted fee award).

Additionally, SMI's general suit seems to have been objectively unreasonable, and SMI appears to have acted with improper motivation (or bad faith conduct). *See Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006) ("[I]mproper motivation in bringing a lawsuit or other bad faith conduct weighs heavily in favor of an award of costs and fees."), *aff'd*, 249 Fed. App'x 845 (2d Cir. 2007). On summary judgment, the Court held that all of SMI's claims required a finding

---

[10] The Court recognizes the difference between "complete preemption" for purposes of the well-pleaded complaint rule and substantive preemption for merits purposes. This does not change the conclusion that it likely would have found a large portion of SMI's claims preempted.

of trade secret misappropriation, which SMI failed to show. Order Granting Summ. J. 29. To show

misappropriation, SMI had to demonstrate unauthorized "use" of its trade secrets. *Id.* at 18.

SMI conceded that it had no direct evidence to demonstrate use, and chose to rely on

circumstantial evidence to show similarity between its VaultWorks solution and ARGO's CIO

solution. *Id.* at 19–20. But, instead of providing circumstantial evidence supporting similarity, SMI:

(1) pointed to no specific similarities between the two products, and admitted that an Internet

search to find competing solutions turned up at least one other product with general similarities

offered by a third party not involved in the suit; (2) "misrepresent[ed] its evidence purportedly

supporting the similarity element"; and (3) ignored evidence demonstrating a lack of

misappropriation. Order Granting Summ. J. 22–25. On this last point:

> [W]hen SMI came to Defendants with its suspicions of misappropriation, Defendants
> openly attempted to address SMI's concerns. They first presented documentation
> showing CIO had been in the works years before ARGO came into contact with
> SMI, and even offered to have a third party expert review CIO and VaultWorks.
> This was SMI's chance to obtain the proof it now struggles to identify—proof of the
> specific characteristics that CIO and VaultWorks allegedly share. But SMI, instead,
> filed suit based on its unsubstantiated allegations. And despite nearly a year of
> discovery—including hiring two experts, neither of whom examined CIO or its
> related documentation—SMI continues to rely purely on its unfounded suspicions.
> Simply put, SMI, in the words of the Defendants, "has . . . elected to ignore CIO
> entirely, bury its head in the sand, and claim that the circumstantial evidence shows
> trade secret use."

*Id.* at 25. The lack of specific similarities between the two products, and the availability of generally

similar alternative products on the Internet greatly undermines the reasonableness of any allegation

of misappropriation. Additionally, SMI's conscious decision to ignore the CIO and bring claims based

on unfounded suspicions smacks of bad faith. This justifies an award of fees. *See Entm't Research Grp.,*

*Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1229 (9th Cir. 1997) (prevailing defendants

awarded fees where plaintiff forced defendant to defend against "objectively unreasonable" claims for which there was no evidence); *Baker*, 431 F. Supp. 2d 357 (bad faith conduct).[11]

Finally, granting fees here advances considerations of compensation and deterrence. Compensation is available when requiring a party to bear its own costs and fees would run afoul of the purpose of the Copyright Act to promote the progress of science and useful arts. *See Fogerty*, 510 U.S. at 529 ("'The expense of any letigation [sic] is considerable . . . . It is increasingly recognized that the person who forces another to engage counsel to vindicate, or defend, a right should bear the expense of such engagement.'" (quoting W. Strauss, *Damage Provisions of the Copyright Law*, Study No. 31 (H. Judiciary Comm. Print 1960))). If unable to recoup costs and fees, businesses whose defense costs outpace their alleged liability could be held hostage by *in terrorem* suits, which would hamper the progress of science and the useful arts.

Here, SMI's damages expert opined that BancorpSouth received unjust enrichment of $66,653 (well below its defense costs). Doc. 211-3, Decl. of Tonya Gray, App. 469. To avoid continued escalating litigation costs, BancorpSouth made an Offer of Judgment for $68,000. *Id.* at 471. SMI did not respond. *Id.*[12] This forced BancorpSouth to continue its defense and to incur an additional $374,792.80 in fees. *Id.* SMI did not reject the Offer of Judgment in bad faith. Its expert had alternatively projected unjust enrichment of $829,805. But even this larger liability exposure

---

[11] It was not objectively unreasonable for SMI to rely on circumstantial evidence to establish unauthorized use. *See* Order Granting Summ. J. 19. What was objectively unreasonable was that SMI ignored unfavorable direct evidence and chose to rely on circumstantial evidence; that it could not provide any circumstantial evidence; and that, despite a lack of evidence, it continued to ardently pursue its claims.

[12] Under Rule 68, "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer [of judgment], the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68. This does not apply when the offeree does not obtain a favorable judgment (i.e., when the defendant prevails). *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981).

exceeded BancorpSouth's total attorneys' fees of $734,276.40 by less than $100,000, which in a $12,000,000 lawsuit is not all that much. *See id.* at 466, 469. It likely would have been more cost-effective for BancorpSouth to settle rather than expend significant resources to defend against SMI's unsuccessful, possibly frivolous, and objectively unreasonable claims. Failure to award compensation here would create a perverse incentive for defendants to settle simply to avoid large litigation costs even when not at fault.

Compensation works hand-in-hand with deterrence. Courts award fees to deter future plaintiffs from bringing similar frivolous or unreasonable claims. *See Baker*, 431 F. Supp. 2d at 359. SMI's suit had numerous flaws in substance and execution that it did not seek to redress. Instead, it ignored or attempted to circumvent them. The majority of the suit appeared to be preempted, so SMI tried and failed to force the claims outside the scope of the Copyright Act. SMI had the opportunity to obtain direct evidence to demonstrate unauthorized "use" of its trade secrets, but instead chose to rely on circumstantial evidence that did not reveal any specific similarities between the CIO and VaultWorks. It also had an opportunity to recover at least a small settlement; instead it rejected the offer, recovered nothing, and forced BancorpSouth to incur $374,792.80 in additional legal fees. This type of suit and this type of conduct should be deterred. Under these circumstances, awarding fees will accomplish this deterrence.

After considering the *Fogerty* factors in light of the Fifth Circuit's "discretionary but routinely awarded" standard, the Court concludes that attorneys' fees are justified under section 505. In all, no single factor was dispositive, but the totality of the circumstances—the possibly frivolous aspects and objectively unreasonable nature of SMI's case, SMI's bad faith conduct, and considerations of compensation and deterrence— warrant an award of attorneys' fees. The Court must now consider

the proper amount of the costs and fees. First, it will calculate the appropriate lodestar values. Then, it will evaluate the lodestar in light of the twelve *Johnson* factors.

D.      *Lodestar Values*

The lodestar equals: (1) the number of hours an attorney reasonably spent on the case multiplied by (2) an appropriate hourly rate based on the market rate in the community for this work. *Black*, 732 F.3d at 502. "Part[ies] seeking attorneys' fees must present adequately documented time records to the court. Using this time as a benchmark, the court should exclude all time that is excessive, duplicative, or inadequately documented." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The non-excluded hours are those reasonably spent on the case. *Id.*      An appropriate hourly rate is the market rate in the legal community for similar services by lawyers of comparable skill, experience, and reputation. *SortiumUSA, LLC v. Hunger*, No. 3:11-CV-1656-M, 2015 WL 179025, at *3 (N.D. Tex. Jan. 14, 2015). The relevant community for determining the market rate is the community where the district court sits. *Id.* (citing *Tollett v. City of Kemah*, 285 F.3d 357, 369 (5th Cir. 2002)). Generally, parties establish the community rate through affidavits of other attorneys practicing there. *Tollett*, 285 F.3d at 469 (citing *Watkins*, 7 F.3d at 458).

Defendants ARGO and BancorpSouth seek attorneys' fees in the amount of $1,190,255 and $711,422.74 respectively. According to Defendants, these amounts have been discounted and have been segregated from other non-recoverable fees. Defendants segregated their fees under a theory of recovery based on the TTLA, and alternatively "seek the same fee award under section 505 of the Copyright Act." Defendants' Motion 23.[13]

---

[13] Because of the availability of attorneys' fees under both the TTLA and the Copyright Act, the Court considers any variance between recovery under one versus the other. It finds its discretionary award

1.    ARGO

Defendant ARGO requests reimbursement of fees incurred for work performed by several Haynes and Boone, L.L.P. (Haynes and Boone) attorneys and paralegals. ARGO's application for attorneys' fees is supported by the Declaration of David Harper, one of the principal attorneys on the case, and by billing statements from Haynes and Boone. *See* Doc. 211 [hereinafter App.]. ARGO did not provide affidavits of other attorneys in the community to establish a community rate.

- David Harper was a principal attorney on the case, is a partner, and currently chairs Haynes and Boone's intellectual property litigation practice. *Id.* at 23. He billed a total of 618.1 hours at a fixed rate of $595 per hour. *Id.* at 6, 262–65.

- Jason Bloom was the second principal attorney on the case, was an associate but became a partner in January 2014, and currently heads Haynes and Boone's copyright practice group. *Id.* at 29. Over the course of the lawsuit, he billed a total of 1523.2 hours: 230 hours at $441 per hour in 2012; 941.9 at $468 in 2013; 232.6 at $513 in 2014; and 118.7 at $540 in 2015.[14] *Id.* at 262–65.

- Ben Mesches is a partner who assisted with preparation for appellate oral argument. *Id.* at 2–3. He billed 3.5 hours at $607.50 per hour. *Id.* at 264.

- Ryan Paulsen is an associate who prepared the proposed jury instructions and assisted with the appellate briefing. *Id.* at 3. He billed 75.1 hours: 38.6 hours at $405 per hour in 2013; 28.1 at $451 in 2014; and 8.4 at $477 in 2015. *Id.* at 262–65.

- Katie Dolan-Galaviz is an associate who prepared ARGO's reply in support of its bill of costs. *Id.* at 3. She billed 9.5 hours at $396 per hour. *Id.* at 264.

- Matt Chiarizio is an associate who provided research assistance for the appellate briefing. *Id.* at 4. He billed 8.8 hours at $279 per hour. *Id.* at 264.

- Sally Dahlstrom is an associate who provided research assistance for appellate oral argument preparation. *Id.* at 4. She billed 5.5 hours at $292.50 per hour. *Id.* at 264.

_____

of fees would not vary statute to statute, and conducts its analysis in a way that availability under both statutes does not allow for double recovery.

[14] All Haynes and Boone timekeeper rates aside from David Harper's were discounted by ten percent. *Id.* at 6. The rates above represent each timekeeper's hourly rates after the discount. *See id.* at 2.

- Tyler Beas is an associate who provided general research assistance. *Id.* at 4. He billed 22.2 hours at $306 per hour. *Id.* at 263.

- Kristi Kirby is a paralegal who assisted with deposition preparation, trial preparation, and document management tasks. *Id.* at 5. She billed 297.1 hours: 7.8 hours at $225 per hour in 2012; 136.6 at $234 in 2013; 138.3 at $243 in 2014; and 14.4 at $261 in 2015. *Id.* at 262–65.

- Denise Stilz is a paralegal who assisted with preparation and filing of various appellate documents. *Id.* at 5. She billed 29.9 hours: 6.3 hours at $243 in 2014; and 23.6 at $261 in 2015. *Id.* at 264–65.

First, the Court finds that Haynes and Boone's hourly fees charged are unreasonably inflated. Other district courts in the Northern District of Texas have found reasonable hourly rates for copyright litigation attorneys of comparable skill, experience, and reputation to range from $100 to $400 dollars. *See, e.g., SortiumUSA, LLC*, 2015 WL 179025, at *9–12 (reducing associate hourly rate from $265 to $202.50 and partner rate from $515 to $400); *see also Powell v. ProCollect, Inc.*, No. 11-CV-846-B, Dkt. No. 30 (N.D. Tex. July 17, 2012) (finding hourly rates from $100 to $400 per hour to be reasonable in this community). Generally, fee awards for rates above $500 per hour are reserved for "specialized tasks in complex cases that few attorneys are capable of handling." *Id.* at *9 (citing *Fluor Corp. v. Citadel Equity Fund Ltd.*, No. 3:08-CV-1556-B, 2011 WL 3820704, at *5 (N.D. Tex. Aug. 26, 2011) (Boyle, J.) (collecting cases with hourly rates ranging to $510 for senior partners performing premium work requiring specialized qualifications)). As for paralegals, reasonable rates range between $60 and $125 per hour. *See Rolex Watch U.S.A., Inc. v. Mills*, 3:12-CV-0061-L, 2012 WL 5903782, at *5–6.[15]

---

[15] SMI argues that Defendants provided no authority that would entitle them to paralegal fees under federal law. SMI's Resp. 8 n.2. This argument is incorrect. 17 U.S.C. § 505 allows prevailing parties to recover paralegal fees. *See, e.g., SortiumUSA, LLC*, 2015 WL 179025, at *1.

ARGO provided billing statements that outline the type and amount of work performed by each attorney or paralegal at Haynes and Boone. It did not, however, provide evidence to establish the prevailing market rate in the Dallas community for copyright litigation attorneys of similar skill, experience, and reputation other than a summary statement in the Declaration of David H. Harper that "[t]he standard rates . . . were both customary and reasonable in the Dallas, Texas market for the types of services performed and experience level of each timekeeper." App. 5. Nor did it establish that this action was particularly complex or required specialization. Thus, the Court will adhere to a general rate of $150 to $400 per hour for attorneys and $100 per hour for paralegals.

Next, the Court finds the time spent on this case by the Haynes and Boone attorneys was reasonable. It was not excessive, duplicative, or inadequately documented. The only misuse of time might be that Jason Bloom performed a significant amount of the work in this case (document and privilege review) that could have been performed by a less-experienced attorney. This, however, should effect the reasonable rate charged for his work, not reduce the time to complete the task itself.

Haynes and Boone segregated their fees under a theory of recovery based on the TTLA, and alternately "seek the same fee award under section 505 of the Copyright Act." Defendants' Motion 23. SMI argues that Defendants did not adequately segregate their fees under the TTLA. SMI's Resp 8. The Court decides this under Texas law. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Fee claimants must segregate the fees for claims for which they may recover from those for which they may not. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). But when the same discrete legal services advance both a recoverable and unrecoverable claim, they need not be segregated. *Id.* at 313–14. The Court agrees with Defendants that "the vast majority of

fees Defendants incurred were for discrete services necessary to the defense of SMI's TTLA claim, and are therefore recoverable" because the TTLA claims, like so many other causes of action in this case, turned on improper use and disclosure of SMI's trade secrets. Defendants' Motion 6. Having reviewed the services Haynes and Boone listed as performed solely in furtherance of defending against SMI's non-TTLA claims, the Court finds such fees adequately segregated. *See* App. 266–68 (summary table of segregated fees).

Also, SMI argues that Defendants cannot recover under the Copyright Act using a TTLA-based segregation scheme. SMI's Resp. 7 (citing *Entm't Research Grp.*, 122 F.3d at 1230). It proposes instead that Defendants' fees "should be limited to its [sic] preemption efforts only." The Court agrees, but this does not change the result. As discussed above, the preemption aspects in this case overshadow the entirety of the litigation. They established the basis for federal jurisdiction; they were evaluated at the dismissal stage; they would have been evaluated at the summary judgment stage; and they were contested and reviewed on appeal. Assuming that some aspects of the case would not be recoverable under section 505 and should be segregated, the amount of hours that would be segregated as unrelated to preemption and the Copyright Act would be less than those unrelated to the TTLA claim. Thus, the segregation scheme based on TTLA recovery sufficiently reduces ARGO's attorneys' fees as would be necessary under section 505, and because ARGO asks for the same award under section 505 as the TTLA, the Court finds this amount to be suitable. The fees segregated under the TTLA theory of recovery reduced the hours billed by 19.3 for David Harper, 56.6 for Jason Bloom, 5 for Tyler Beas, 10.1 for Ryan Paulsen, and 6.4 for Kristi Kirby.

Now the Court will use the rate ranges listed above[16] and this reduction of hours[17] to calculate the lodestar on an attorney-by-attorney basis. The appropriate lodestar for David Harper is 598.8 hours at $400 per hour totaling $239,520;[18] for Jason Bloom it is 1115.3 hours at $200 per hour and 351.3 hours at $250 per hour totaling $310,885;[19] for Ben Mesches it is 3.5 hours at $300 per hour totaling $1,050; for Ryan Paulsen it is 65 hours at $200 per hour totaling $13,000; for Katie Dolan-Galaviz it is 9.5 hours at $200 per hour totaling $1,900; for Matt Chiarizio it is 8.8 hours at $200 per hour totaling $1,760; for Sally Dahlstrom it is 5.5 hours at $200 per hour totaling $1,100; for Tyler Beas it is 17.2 hours at $200 per hour totaling $3,440; for Kristi Kirby it is 290.7 hours at $100 per hour totaling $29,070; and for Denise Stilz it is 29.9 hours at $100 totaling $2,990. Thus, the total lodestar amount for ARGO is $604,715.

2.    BancorpSouth

Defendant BancorpSouth requests reimbursement of fees incurred for work performed by several Andrews Kurth LLP (Andrews Kurth) attorneys and paralegals. BancorpSouth's application

---

[16] The Court is using a rate range of $150–$400 per hour for attorneys and $100 for paralegals. For the Haynes and Boone attorneys and paralegals, the Court selects a general rate of $300 per hour for partners, $200 per hour for associates, and $100 per hour for paralegals. This rate reflects the relative experience of partners compared to associates, and reflects the fact that Haynes and Boone acted as lead counsel in this matter (the general rate for Andrews Kurth associates is $150, *infra* note 18).

[17] In reducing the number of hours, the Court applied the fee segregation deductions to the hours of David Harper, Jason Bloom, Tyler Beas, Ryan Paulsen, and Kristi Kirby. It made no further reductions.

[18] The Court sets David Harper's rate at $400 per hour. Harper was the principal partner representing ARGO, and acted as lead counsel for the entire case. As a result, his rate sits at the top of the selected $150–$400 range.

[19] The Court sets Jason Bloom's rate at $200 per hour for hours billed as an associate and increases this amount to $250 for hours billed as a partner. The Court does not increase his rate for hours billed as a partner to $300 because the transition occurred during the litigation, and Bloom would be relatively less experienced than other partners billing on this case.

for attorneys' fees is supported by the Declaration of Tonya Gray and by billing statements from Andrews Kurth.[20] *See* App. 462–685. BancorpSouth did not provide affidavits of other attorneys in the community to establish a community rate.

Andrews Kurth provided a twenty-percent discount to their standard rates lowering their rates to the range "from $200.00 to $228.00 for paralegals, $212.00 to $296.00 for associate attorneys, $476.00 to $532 for partners, and $748 for senior partners during the time period from August 27, 2012 to June 30, 2015." App. 464–65. Because these ranges do not align with the ranges listed above ($150 to $400 per hour for attorneys and $100 per hour for paralegals), the Court will not list out each attorney's hourly. It will list just the number of hours billed.

- Tonya Gray was a principal attorney on the case and is a partner at Andrews Kurth. *Id.* at 482. She billed a total of 873 hours. *Id.* at 490–679.

- Nicole Kamprath was a principal attorney on the case and was an associate at Andrews Kurth until mid-2014. *Id.* at 485. She billed 830.5 hours. *Id.* at 490–654.

- James Bookhout is an associate who assisted with the case after Nicole Kamprath withdrew as counsel. *See id.* at 487. He billed 9.7 hours. *Id.* at 671–74.

- Jennifer Trousdale is an associate who provided research assistance. *Id.* at 614. She billed 5.4 hours. *Id.* at 614–19.

- Jerry Beane is a senior partner who provided assistance preparing for trial. *Id.* at 630–38. He billed .4 hours. *Id.*

- Paralegals and legal assistants E. Eason-Hall, A. Jones, Clark Patterson, C. Le, and C. Arellano billed a total of 311.3 hours: 16.4, 9.2, 280.7, 4.5, and .5 hours, respectively. *Id.* at 490–679.

The Court finds the time spent on this case by Andrews Kurth was slightly excessive. The Court may reduce the requested award if it finds that the hours billed are "excessive, redundant, or

---

[20] The Court viewed Andrews Kurth's billing statements *in camera*.

otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). In doing so, the Court can apply an across-the-board percentage reduction if it determines that the number of hours billed was unreasonably high. *See Kirsch v. Fleet St., Ltd.,* 148 F.3d 149, 173 (2d Cir. 1998) (citing *Hensley*, 461 U.S. at 434). "The Court should not evaluate 'whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Fluor Corp.*, 2011 WL 3820704, at *5 (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)).

For much of the case BancorpSouth and ARGO coordinated their efforts. By agreement, ARGO took the "lead role on the majority of the parties' joint efforts, including briefing and depositions." Defendants' Motion 12 n.60. As a result, BancorpSouth incurred less attorneys' fees defending this case than ARGO because Andrews Kurth did not need to bill as many hours to prepare their portion of the joint defense. *Id.* Haynes and Boone billed approximately 2600 hours in this matter with David Harper, Jason Bloom, Kristi Kirby billing the lion's share of 2420.7 hours. Andrews Kurth billed 2030.3 hours with Tonya Gray, Nicole Kamprath, Clark Patterson billing 1984.2 hours of that. Given the disparity in the parties' projected liability exposure—$12,000,000 for ARGO versus $66,653, or alternatively $829,805, for BancorpSouth—as well as the fact that Haynes and Boone took the lead role on a majority of the parties' joint efforts, a reasonable attorney would not have engaged in time expenditures similar to those of Andrews Kurth. *See Fluor Corp.*, 2011 WL 3820704, at *5 . Accordingly, the Court will reduce the hours billed by Andrews Kurth when calculating the lodestar by twenty percent (20%).

Also, Andrews Kurth, like Haynes and Boone, segregated their fees under a TTLA-based theory of recovery, and alternatively "seek the same fee award under section 505 of the Copyright

Act." Defendants' Motion 23. For the reasons stated above for Haynes and Boone, the Court considers their approach to be suitable.  Having reviewed the services Andrews Kurth listed as performed solely in furtherance of defending against SMI's non-TTLA claims, the Court finds such fees adequately segregated. See App. 684–85 (summary table of segregated fees). The fees segregated under the TTLA theory of recovery reduced the hours billed by 23.8 for Tonya Gray, 36.2 for Nicole Kamprath, and by 10.7 for paralegals and legal assistants. The Court will factor this reduction into its lodestar calculations.

Now the Court will use the rate ranges listed above[21] and a reduced number of hours[22] to calculate the lodestar on an attorney-by-attorney basis. The appropriate lodestar for Tonya Gray is 679.36 hours at $300 per hour totaling $203,808;[23] for Nicole Kamprath it is 635.44 hours at $150 per hour totaling $95,316; for James Bookhout it is 7.76 hours at $150 per hour totaling $1,164; for Jennifer Trousdale it is 4.3 hours at $150 per hour totaling $648; for Jerry Beane it is .3 hours at $400 per hour totaling $120;[24] and for Andrews Kurth's paralegals and legal assistants it is 240.5 hours at

[21] The Court is using a rate range of $150–$400 per hour for attorneys and $100 for paralegals. For the Andrews Kurth attorneys, paralegals, and legal assistants, the court selects a general rate of $250 per hour for partners, $150 per hour for associates, and $100 per hour for paralegals and legal assistants. This rate reflects the relative experience of partners compared to associates, and reflects the fact that Andrews Kurth did not act as lead counsel in this matter.

[22] In reducing the number of hours, the Court first applied the fee segregation deductions to the hours of Tonya Gray, Nicole Kamprath, and the paralegals. Then it reduced all hours by an across-the-board percentage of twenty percent (20%).

[23] The Court sets Tonya Gray's rate at $300 per hour. She was the principal partner representing BancorpSouth in this case. The rate for Haynes and Boone's principal partner was $400 per hour. Because Haynes and Boone took a lead role in this representation, and because a large portion of the work Tonya Gray preformed in this case could have been performed by a less-experienced attorney, the Court has reduced her hourly rate.

[24] The Court sets Jerry Beane's rate at $400. Jerry is a senior partner whose expertise warrants a higher hourly rate than the general $250 per hour.

$100 per hour totaling $24,050. Thus, the total lodestar amount for BancorpSouth is $325,106.

E.    *Johnson Factors*

The Court now must determine whether to alter each lodestar amount in light of the twelve *Johnson* factors, including: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the requisite skill to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19. Many of these factors are fully reflected in the lodestar amount. Additional alterations based on one of these factors would be impermissible double counting. *SortiumUSA, LLC,* 2015 WL 179025, at *3.

Here, factors 1, 2, 3, 5, 7, 8, 9, 11, and 12 are fully reflected in the lodestar amounts for both Defendants. Factors 4, 6, and 10, while possibly in play, did not have a combined impact significant enough to warrant an alteration. Thus, the Court finds no need to alter the lodestar amount for ARGO or BancorpSouth. Therefore, the Court awards attorneys' fees to ARGO in the amount of $604,715. and to BancorpSouth in the amount of $325,106.

E.    *Taxable Costs*

Defendants also claim entitlement to taxable costs and post-judgment interest. To support their request for costs, each defendant has provided a Bill of Costs. Docs. 178, 179. SMI objects to both Bills of Costs. Docs. 185, 186. Under Rule 54(d)(1) of the Federal Rules of Civil Procedure, "costs—other than attorney's fees—should be allowed to the prevailing party." Costs include: (1)

fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) witness fees and related expenses; (4) printing costs; and (5) fees for copies of papers necessarily obtained for use in the case. 28 U.S.C. § 1920; *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987). This list is exhaustive. Courts may decline to award statutory costs but may not award costs not enumerated in the statute. *Title v. Raines*, No. 3:99-CV-0478-L, 2002 WL 31757623, at *1 (N.D. Tex. Dec. 3, 2002) (citing *Crawford Fitting Co.*, 482 U.S. at 441–42; *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993)).

1.   ARGO

ARGO requests $26,059.86 in costs. Doc. 179, ARGO Bill of Costs. SMI objects that ARGO: (1) did not articulate the necessity of any of the depositions it took; (2) is not entitled to deposition costs of deponents under its control or BancorpSouth's control; (3) is not entitled to video deposition costs because it did not obtain prior approval from the court; (4) is not entitled to incidental deposition expenses; and (5) is not entitled to charges for copying. Doc. 186, Obj. to ARGO Bill of Costs.

SMI's first four objections address recovery of deposition costs. 28 U.S.C. § 1920 allows for fees for deposition costs necessarily obtained for use in the case. A party necessarily obtains a deposition for use in the case if it obtains it to aid in trial preparation, *see Fogleman v. ARAMCO (Arabian Am. Oil Co.)*, 920 F.2d 278, 285 (5th Cir. 1991), or for support in a motion for summary judgment. *Title*, 2002 WL 31757623, at *2. This includes depositions that require certification under Federal Rule of Civil Procedure 30(f)(1). Here, ARGO used all deposition transcripts in preparation for trial or in its motion for summary judgment. Doc. 179, ARGO Bill of Costs 3–4. Thus, they were necessarily obtained for use in the case.

Ordinarily a party is not entitled to recover costs for a copy of the deposition of a witness under its or a co-defendant's control. *Interstate Contracting Corp. v. City of Dallas*, No. 3:98-CV-2913-M, Doc. 298, at *4–5 (citing *Liberty Mut. Ins. Co. v. Gardere & Wynne*, No. 3:95-CV-1330-L, 2004 WL 691229, at *1 (N.D. Tex. Mar. 29, 2004)). But courts do allow for costs of depositions of a party's own witnesses if the opposing party noticed and took the definition. *See Petri v. Kestrel Oil & Gas Properties, L.P.*, No. H-09-3994, 2013 WL 265973, at *8 (S.D. Tex. Jan. 17, 2013). Here, SMI noticed and took depositions of all witnesses under ARGO or BancorpSouth's control. Doc. 194, Reply to Obj. 4. Thus, ARGO may recover these costs.

As for video deposition costs, parties may recover costs for video recordings necessarily obtained for use in the case. *S & D Trading Acad. LLC v. AAFIS, Inc.*, 336 F. App'x 443, 450–451 (5th Cir. 2009). They do not need to receive prior authorization from the Court. *SynQor, Inc. v. Artesyn Techs., Inc.*, 2:07-CV-497-TJW-CE, 2011 WL 4591893, at *2 (E.D. Tex. Sept. 30, 2011). *But see Hancock v. Chicago title Ins. Co.*, 3:07-CV-1441-D, 2013 WL 2391500, at *15 (N.D. Tex. June 3, 2013). *See generally Allstate Ins. Co. v. Plambeck*, 66 F. Supp. 3d 782, 784 (N.D. Tex. 2014). Additionally, parties may obtain costs for both the videotape deposition and written transcription so long as both are necessarily obtained for use in the case. *Plambeck*, 66 F. Supp. 3d at 789. Here, the Court finds that the videotape depositions that were obtained in addition to written transcriptions were obtained to aid in trial preparation. Thus, ARGO may recover costs for them.

SMI also objects to incidental deposition expenses for certified copies, color copies, exhibit tabs, indices, delivery charges (including expedited delivery charges), TotalTranscript fees, and interactive real time display of deposition transcripts during the depositions. Costs of copies in their various forms may be obtained for use in litigation if necessarily obtained for use in the case. 28

U.S.C. § 1920(4). This includes certified copies, color copies, and indices. Looking at the statute, the Court concludes that exhibit tabs, general delivery charges, and real time display of the deposition are conveniences but not necessary for use in the case and should be excluded from costs, *Bank One Texas, N.A. v. Apex Energy, LLC.*, No. 3:00-CV-2160-M, 2002 WL 22055, at *2 (N.D. Tex. Jan. 4, 2002); whereas expedited delivery was necessary to meet expert objection deadlines and should remain included.[25] *See Cox v. Waste Mgmt. of Tex., Inc.*, No. H-10-1626, 2013 WL 690849, at *2 (S.D. Tex. Feb. 25, 2013). ARGO has conceded that it is not entitled to recover these excluded costs; thus, the Court reduces ARGO's recoverable costs by $1,917.15. *See* Doc. 194, Reply to Obj. 8.

Finally, SMI objects to charges for copying, and claims that ARGO has not shown that the photocopying costs it incurred were necessary for its defense in this case. The Court agrees. Although ARGO need not identify every copy used in the course of this litigation, *see Fogleman*, 920 F.2d at 286, it still must show that the copying costs were necessary for use in the case. 28 U.S.C. § 1920. Here the documents submitted by ARGO merely show that photocopies were made on certain dates, at certain costs, and in some instances, by certain persons. But ARGO fails to explain in specific terms the nature of the documents that were copied or how they were necessary to litigate this case. All ARGO offers is the generic statement that it "incurred $676.04 in costs to make copies of materials that were used in the case." Doc. 179, ARGO Bill of Cost, Decl. of David Harper 2. The Court finds that this statement is far from sufficient to meet its burden of demonstrating necessity. *See Wright v. Blythe-Nelson*, No. 3:99-CV-2522-D, 2004 WL 2870082, at *10 (N.D. Tex. Dec. 13,

---

[25] SMI provided its experts for deposition on October 3, 2013 and October 8, 2013, with an October 11, 2013, deadline for expert objections.

2004) (finding insufficient the broad statement that photocopy expenses were necessarily incurred in prosecuting the lawsuit). Thus, the Court reduces ARGO's recoverable costs by $676.04. Therefore, it may recover $23,466.67 in taxable costs.

2.   BancorpSouth

BancorpSouth requests $17,082.49 in costs. Doc. 178, BancorpSouth Bill of Costs. SMI objects that BancorpSouth: (1) did not explain the necessity of any of the depositions it took; (2) is not entitled to deposition costs for Julie Swain, its corporate representative; (3) is not entitled to video deposition costs because it did not obtain prior approval from the court; (4) is not entitled to incidental deposition expenses; and (5) is not entitled to costs for e-discovery or trial materials. Doc. 185, Obj. to BancorpSouth Bill of Costs.

Here, BancorpSouth used all deposition transcripts in its pretrial motions or in preparation for trial. Doc. 178, BancorpSouth Bill of Costs 2. Thus, for the reasons above, they were necessarily obtained for use in the case. Additionally, for the reasons stated above, BancorpSouth may recover costs for Julie Swain's deposition[26] and its video depositions.

As for incidental expenses, SMI objects to indices, delivery charges, binding, condensed transcripts, e-trans, after-hours appearance fees, TotalTranscript fees, exhibit tabs, and realtime streaming of the deposition transcript. For the reasons above, BancorpSouth may recover its costs for expedited delivery of the expert deposition transcripts. BancorpSouth argues that it also may recover for copies of deposition exhibits and administrative fees for depositions if necessary for the

---

[26] BancorpSouth also points to the exception that a party may recover costs for a deposition of its own witness if used in its motion for summary judgment. Doc. 192, Reply to Obj. 4 (citing *Liberty Mutual Ins. Co.*, 2004 WL 691229, at *1). The Court agrees with this as an alternative basis for recovering costs in this case.

case. The Court agrees. *See Sealey v. EmCare, Inc.*, No. 2:11-CV-120, 2013 WL 3772470, at *2 (S.D. Tex. July 15, 2013) ("Other deposition expenses may also be taxable provided they represent reasonable expenses necessary for the preparation of the case."). Here, it can be reasonably assumed that the exhibits were used for trial preparation, proving them necessary. BancorpSouth withdraws all other requests for incidental expenses totaling $690.00; thus, the Court reduces its recoverable costs by this amount.

Finally, SMI objects to e-discovery and trial preparation costs. It objects that e-discovery is not recoverable because electronic conversion is a matter of convenience, not necessity. Courts have found that parties may recover costs for scanning documents to meet discovery requests. *See Rundus v. City of Dallas*, No. 3:06-CV-1823-BD, 2009 WL 3614519, at *3 (N.D. Tex. Nov. 2, 2009), *amended*, No. 3:06-CV-1823-BD, 2009 WL 9047529 (N.D. Tex. Dec. 10, 2009); *Harris Corp. v. Sanyo N. Am. Corp.*, No. 3:98-CV-2712-M, 2002 WL 356755, at *2 (N.D. Tex. Mar. 4, 2002). Here, BancorpSouth made the electronic conversions to meet discovery requests from SMI. Doc. 192, Reply to Obj. 12. Thus, it may recover costs for these electronic conversions.

For trial preparation costs, SMI objects to costs for creating an electronic demonstrative aid and for copies related to trial exhibits. The Fifth Circuit allows costs for production of demonstrative aids with court approval. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 335 (5th Cir. 1995). Here, BancorpSouth did not seek approval. It argues that it prepared demonstratives per the Court's Scheduling Order (Doc. 18), which instructs the parties to exchange a complete set of marked exhibits, including demonstrative exhibits. This, however, does not amount to court authorization. As a result, BancorpSouth may not recover costs for demonstratives totaling $1,890.

Parties may recover costs for copies of trial exhibits under the same requirements as they

would recover copies of depositions or photocopies. *See Fogleman*, 920 F.2d at 286 ("[R]eproductions necessarily obtained for use in the case are included within taxable costs."). Unlike ARGO's request for general photocopy costs, BancorpSouth's request states costs for copies of trial exhibits. Though generic, this request has enough specificity for the Court to determine its necessity. Thus, BancorpSouth may recover costs for copies of its trial exhibits. Therefore, it may recover $14,502.49 in costs.

F.      *Post-judgment Interest*

The Court orders SMI to pay Defendants post-judgment interest, at a rate of .54% per annum, on the total amount of attorneys' fees and costs ultimately awarded, accruing from the date of this Order. The Fifth Circuit allows interest on attorneys' fees, accruing from the date the court recognizes a right to the fees, at the rate available for a judgment on the merits. *See Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542, 544–45 (5th Cir. 1983) (en banc) ("If, however, judgment is rendered without mention of attorneys' fees, and the allowance of fees is within the discretion of the court, interest will accrue only from the date the court recognizes the right to such fees in a judgment."), *overruled in part on other grounds by J.T. Gibbons, Inc. v. Crawford Fitting Co.*, 790 F.2d 1193, 1195 (5th Cir. 1986), *aff'd*, 482 U.S. 437 (1987) (holding that prevailing party is entitled to interest on attorneys' fees at the same interest rate as that applied to the judgment on the merits).

G.      *Appellate Fees*

Defendants also request appellate fees contingent upon future appeals. The Court finds that any award of appellate fees at this time would be speculative. Therefore, the Court denies an award of appellate fees without prejudice to refiling after such fees have actually been incurred.

### IV.

## CONCLUSION

For these reasons, the Court **GRANTS in part** Defendants' Motion. The Court finds that Defendants are entitled to attorneys' fees and taxable costs, but not in the amount requested. The Court reduces the fees awarded in accordance with the lodestar standards of reasonableness, and reduces the costs awarded in accordance with 28 U.S.C. § 1920.

Plaintiff Spear Marketing, Inc., is **ORDERED** to pay Defendants the following attorneys' fees and taxable costs:

- Defendant ARGO: **$604,715** in attorneys' fees and **$23,466.67** in taxable costs, totaling **$628,181.67**, subject to post-judgment interest.

- Defendant BancorpSouth: **$325,106** in attorneys' fees and **$14,502.49** in taxable costs, totaling **$339,608.49**, subject to post-judgment interest.

SO ORDERED.

Dated: January 14, 2016.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

-33-